IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FRANCO M. PONQUINETTE, IV,          :
                                    :
      Plaintiff,                    :
                                    :
vs.                                 :
                                    :          CIVIL ACTION 15-520-M
CAROLYN W. COLVIN,                  :
Social Security Commissioner,       :
                                    :
      Defendant.                    :

MEMORANDUM OPINION AND ORDER

     In this action under 42 U.S.C. § 405(g), Plaintiff seeks
judicial review of an adverse social security ruling denying a
claim for disability insurance benefits (Docs. 1, 22).  The
parties filed written consent and this action has been referred
to the undersigned Magistrate Judge to conduct all proceedings
and order judgment in accordance with 28 U.S.C. § 636(c),
Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 29).
Oral argument was waived in this action (Doc. 30).  After
considering the administrative record and the memoranda of the
parties, it is **ORDERED** that the decision of the Commissioner be
**AFFIRMED** and that this action be **DISMISSED**.

     This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and
Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Ponquinette was thirty-eight years old, had completed a college education (Tr. 39), and had previous work experience as an executive assistant (Tr. 55).  Plaintiff alleges disability due to HIV, depression, and psychosis (Doc. 22 Fact Sheet).

The Plaintiff applied for disability benefits on April 26, 2013, asserting a disability onset date of June 30, 2012 (Tr. 12, 188-91).  An Administrative Law Judge (ALJ) denied benefits, determining that although he could not return to his past relevant work, Ponquinette was capable of performing specific light work jobs (Tr. 12-24).  Plaintiff requested review of the hearing decision (Tr. 7-8), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Ponquinette alleges the single claim that the ALJ's fashioning of the residual functional capacity (hereinafter *RFC*) is not supported

by the evidence (Doc. 22).  Defendant has responded to—and denies—these claims (Doc. 25).  The Court's summary of the relevant record evidence follows.[1]

Ponquinette was admitted to Peachford Behavioral Health System on June 7, 2012 for acute psychosis, hallucinations, delusions, and paranoia after smoking crystal meth (Tr. 412-23, 705-25).  Dr. Michael R. Vaughn discharged him five days later; he was alert, oriented in four spheres, in a good mood with logical thought process and without delusions.  The discharge diagnosis was psychosis, NOS and methamphetamine dependence; he also had syphilis.

On January 16, 2013, Plaintiff was brought to Grady Health System for manic behavior, behavioral paranoia, and being a danger to self; he had been smoking methamphetamine and taking amphetamines and had been detained for disorderly conduct (Tr. 321-48, 377-79, 383-90).  Ponquinette was suffering from delusions; his thoughts were disorganized.  Memory was impaired while insight and judgment were poor.  A head CT showed findings in keeping with a subcentimeter colloid cyst in the region of the foramen of Monro without hydrocephalus (Tr. 377-79). Plaintiff was stabilized and discharged.  On January 30, Ponquinette was seen after taking meth; he was better after

---

[1]As Plaintiff's claim focuses on the mental aspects of his RFC, the Court's discussion of the physical realm will be less prominent in the summary.

being given anti-psychotic medication (Tr. 391-943).  On
February 12, 2013, Ponquinette was seen for leg abrasions after
getting arrested following two-to-three days of taking crystal
meth; as he was about to be discharged to jail, he screamed that
he was going to kill himself quickly (Tr. 394-97).  The next
day, still in the hospital, Plaintiff claimed to be Jesus; he
indicated that he was depressed, sad, tired, nervous, anxious,
worried, fearful, paranoid, and experiencing auditory
hallucinations most of the time (Tr. 359-76; *see also* Tr. 550-
78).  The Social Worker noted that Ponquinette was manic, hyper-
verbal, agitated but cooperative, and that he had illogical
thought process and content; Plaintiff was given Ativan[2] and an
anti-psychotic before being discharged to jail.  The diagnostic
impression ruled out major depressive disorder, MRE mixed,
severe, with psychotic features.

On April 7, Plaintiff went to Emory University Hospital
Emergency Department with nausea and vomiting as well as
complaints of abdominal pain after having not eaten in two days;
he was given anti-nausea medication and morphine (Tr. 526-34,
664-72).

---

[2]**Error! Main Document Only.**"*Ativan* (lorazepam) is indicated for the
management of anxiety disorders or for the short-term relief of the
symptoms of anxiety or anxiety associated with depressive symptoms."
Its use is not recommended "in patients with a primary depressive
disorder or psychosis" *Physician's Desk Reference* 2516-17 (48th ed.
1994).

On April 14, Ponquinette went to the Piedmont Hospital Emergency Room for shortness of breath for one week's duration; he also reported a productive cough, nausea, and vomiting (Tr. 292-306; 673-97).  Plaintiff was noted to have HIV, but was not taking medication; a chest x-ray was normal.  He was diagnosed to have acute bronchitis.

Lab results from April 15, 2013 confirmed that Ponquinette had Human Immunodeficiency Virus (hereinafter *HIV*) (Tr. 311-20).

On April 18, Plaintiff went to Grady Hospital after being hit by a car, causing left flank pain and a headache; he was not confused and denied drug or alcohol use, but was anxious and expressed the conclusion that the car hit him because he was homosexual (Tr. 380, 399-407, 549, 579-601).  He was given Ultram[3] and Naproxen[4] (Tr. 549).

On May 5, Plaintiff went to Emory Healthcare for general abdominal pain and shortness of breath for which he was given Vicodin[5] (Tr. 517-25, 655-63).

On June 1, Plaintiff returned to Emory University Hospital

---

[3]**Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[4]**Error! Main Document Only.***Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458 (52nd ed. 1998).

[5]**Error! Main Document Only.***Vicodin* is a class three narcotic used "for the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 1366-67 (52nd ed. 1998).

for generalized weakness, but left before he received any
treatment (Tr. 729-30).

Records from Dekalb County Jail, dated June 3, 2013,
indicate that Ponquinette carjacked an ambulance, with two
people aboard, from Emory Hospital and was involved in a high
speed car chase; he admitted to a history of using
Methamphetamine and indicated that he thought he had been
drugged in connection with this incident (Tr. 425-60).
Following his arrest, Plaintiff appeared stable and was
receptive to counseling that he needed to address his substance
abuse issues.  Four days later, he was calm, cooperative, and
euthymic with organized and linear thinking; Ponquinette was on
no psychiatric medications and was moved from the mental health
evaluation unit to general population.

On December 4, Dr. Piyush C. Patel, with the Fulton County
Health Department, performed a psychiatric evaluation of
Plaintiff who reported crystal meth on a regular basis for the
prior four years; he also had a history of amphetamine and
marijuana abuse, though he had been sober for four months (Tr.
504-05; see generally Tr. 461-508).  On examination, Ponquinette
was oriented in four spheres; thought process was linear,
logical, coherent, and goal-directed.  He appeared to be of
average intelligence with good memory and fair concentration; he
had good insight and judgment.  Patel's diagnosis was as

6

follows:  amphetamine dependence, in remission; cannabis abuse in remission; major depressive disorder, recurrent; history of psychotic episode due to amphetamine intoxication; rule out Bipolar disorder; and rule out psychotic disorder.  Abilify[6] was prescribed.

On December 16, 2013, Charles Stephen Hamby, Ph.D. performed a psychological evaluation of Ponquinette who complained of concentration problems (Tr. 510-16).  Plaintiff was oriented in four spheres, but appeared somewhat discouraged and sad; mood was subdued and affect was constricted.  Attention span and concentration were good; thought processes were normal with no evidence of obvious impairment.  Ponquinette's memory was good; insight and judgment were considered average.  He stated that he had been depressed for many years and that his energy and motivation tended to be poor; he had very little hope.  Plaintiff stated that he thought car horns were telling him to go in a certain direction; he thought people were out to get him.  Hamby's diagnosis was schizoaffective disorder and polysubstance dependence; it was his opinion that Ponquinette's IQ was in the low-average range.  Plaintiff's activities of daily living appeared reasonable for a homeless individual. Hamby volunteered the following limitations:

---

[6]*Abilify* is a psychotropic drug used in the treatment of schizophrenia.  **Error! Main Document Only.***Physician's Desk Reference* 872-74 (62nd ed. 2008).

> The claimant would be able to
> understand, remember and carry out simple
> instructions although his pace and
> persistence would be expected to be somewhat
> limited.  Also, some disruption in this
> ability would be expected as a result of his
> reported psychotic symptoms.  He would be
> able to sustain his attention in order to
> complete simple tasks although again, some
> disruption in this ability would be
> expected.  The claimant would have moderate
> difficulty relating to supervisors and
> coworkers, primarily as a result of his
> reported suspiciousness and paranoia.  The
> claimant would be at mild to moderate risk
> for psychiatric decompensation under
> stressful work conditions.
> The claimant's mental condition would
> be expected to possibly improve if he does
> in fact follow through in receiving mental
> health treatment and taking appropriate
> psychotropic medication.

(Tr. 515).

On January 12, 2014, Ponquinette went to Grady Hospital,
complaining of chest pain for two days, with no radiating
symptoms (Tr. 608-17).  An ECG indicated left ventricular
hypertrophy.

On February 24, Plaintiff went to Piedmont Healthcare for
moderate left foot pain caused by walking without shoes;
blisters and callouses were noted and treated (Tr. 698-704).

On March 6, Plaintiff went to Grady Hospital for right foot
pain from walking in shoes that did not fit; he also had right
eye drainage, and a cough (Tr. 618-27).  Ponquinette was treated

and discharged.

Records from Georgia Department of Corrections, dated May 20, 2014 through October 23, 2014, reveal treatment for various physical ailments and medication prescriptions (Tr. 731-40).

On November 6, Plaintiff went to the Mobile County Health Department to establish medical treatment after having recently moved to Mobile (Tr. 641-50).

On November 11, Plaintiff was treated at Grady Hospital for a cough, fatigue, and red, itchy eyes (Tr. 627-38).

On November 17, Ponquinette visited Fulton County Health Department to refill his Abilify prescription (Tr. 651).

This concludes the Court's summary of the record evidence.

In bringing this action, Ponquinette asserts that the RFC determination is not supported by substantial evidence (Doc. 22). More specifically, Plaintiff asserts that the ALJ did not properly consider the findings of Psychologist Hamby and did not pose proper hypotheticals to the VE.

The Court notes that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *3. The ALJ is responsible for determining a claimant's RFC.

9

20 C.F.R. § 404.1546 (2016).  That decision cannot be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

Plaintiff has taken issue with the following portion of the ALJ's RFC determination:

> The claimant can perform simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes.  The claimant can perform work that involves no interaction with the public.  He can tolerate occasional and non-transactional interaction with co-workers, and occasional interaction with supervisors.  The claimant is unable to work in close proximity to others.  He can sustain attention for two-hour periods with customary breaks.  He would have one unplanned absence per month.

(Tr. 17).  Ponquinette objects to these findings because Psychologist Hamby indicated that his pace and persistence would be "somewhat limited" and would likely even be disrupted because of his psychosis (Doc. 22, p. 14; *cf.* Tr. 515).

The Court notes that the ALJ gave "significant weight to Dr. Hamby's opinions [] because they are generally consistent with the examination findings and treatment evidence" (Tr. 22).  Before reaching that decision, however, the ALJ discounted

Plaintiff's testimony concerning his limitations as non-credible, a finding not challenged in this action (Tr. 22). Furthermore, the ALJ noted that Ponquinette's hospitalizations and treatment periods were "sparse and sporadic," signifying his ability to manage his symptoms on a daily basis (Tr. 22). Finally, the ALJ noted that Plaintiff, by his own testimony, indicated that he responded well to his medications; the problem there, though, was the inconsistency with his following the prescribed regimen (Tr. 22).

The Court finds that the ALJ's determination regarding Ponquinette's RFC is supported by substantial evidence.  In addition to the reasons enunciated, the Court would further point out that the Court record is devoid of medical evidence of Plaintiff's difficulties with his mental impairment following Hamby's examination as the evidence pertains only to various physical ailments.

Ponquinette has also asserted that the ALJ's hypothetical questions to the Vocational Expert did not accurately reflect the findings made by Hamby (Doc. 22, pp. 17-19).  The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision.  *Pendley v. Heckler*, 767 F.2d

1561 (11th Cir. 1985).

The Court notes that Plaintiff's argument is a variation of the same argument presented earlier, extended to the ALJ's hypothetical questions to the vocational expert. The Court has already found that the ALJ's RFC determination was supported by substantial evidence. As such, Ponquinette's claim here gains no new strength.

Plaintiff has raised a single claim, with two variations of it, in bringing this action. The claim is without merit as the ALJ's determination is supported by substantial evidence. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 9th day of August, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE